That is Tucker v. Garland. Okay, Mr Formica, you set? You need a minute? I'm prepared to go forward, Your Honor. Okay. Am I pronouncing your name right? Formica? No, it's not. So tell me, what's your name? If you're above 95, it is Formica. If you're below root 95, it's Formica. Formica. All right. Well, I guess, what are we below? Formica? Formica. I think in this part of 95 would be Formica. All right. So, Mr. Formica, you've reserved three minutes for rebuttal. I have, Your Honor. So go ahead. The floor is yours. Good morning, Your Honor. May it please the Court. My name is Glenn Formica. I just want to point out my client, Mr. Tucker, is here in the Court as well. He's at the back. Your Honor, this is an appeal of an immigration court hearing in Hartford, Connecticut. The legal standard was clear and convincing as far as whether or not he was to be removed. Under matter of SH, which is a BIA decision from 2004, I believe, there was supposed to be a comprehensive finding of facts in this case. So, with the limited time that I have, Your Honor, and not to turn this into a court trial, I would ask the Court to focus on the record itself, particularly at 333 and 337, because the issue in the case, the underlying issue, was whether or not Mr. Tucker had entered on a fraudulent visa. Correct. And it was a visa that was issued to someone else, wasn't it? So that's what was purported, Your Honor. And I just want to draw something out, because even in my brief... Isn't that the end of the case? It is, if the government had met its initial burden of clear and convincing evidence that it was, in fact, a fraudulent visa. In a very broad sense, Your Honor, our claim is that the judge basically just took the say-so of the government and said, yep, it's fraudulent and we're done here. And I'd point out, to clarify a point in my brief at page 27, but it also, this clarification kind of underlines what the issue was. So, the issue is whether or not Mr. Tucker entered with another gentleman's name, I'll refer to him as CA, it's in the record, FOIL number. But what the government presented, and what frankly confused me until I had read the reply brief of the government, was that at 36 in the record and 37 there's an NIV applicant detail. And quite frankly, Your Honor, just because of the photocopying, it was my misunderstanding that the government in the immigration court had been arguing that there was some sort of fraudulent and maybe a photo substitution. And that's just simply because the photo of my client washed out kind of looks similar to CA's photo washed out. So, and that wasn't the case. But what the government had in front of it was a visa for Mr. Tucker with a FOIL number that matched Mr. CA. That's all the evidence that seemed to have gone in there. They didn't show, they didn't provide any testimony. There's an I-213, right, that lays out a bunch of facts. There's some of this other evidence that you've talked about. And I-213 is generally presumptively reliable unless its reliability has been undermined or questioned in some way. So how is that undermined or questioned here? So, and we try this on our briefs. I'm not just creating it at the podium. If you go into the 213 and then the documents which come from National Security Fraud Detection Unit, which is a U.S. CIS office that investigates, there's all kinds of factual errors in the 213. In the 213, they point out that he's, you know, the subject of this big investigation. But then when you look at what's supporting the 213, which is from FD&S, I mean, it's really all about something else. And what it really comes down to, if you take everything at face value that they submitted, was that he drove a suspect's girlfriend, I think was the underlying to the airport, and that she was a drug courier. And then they, the HSI, Homeland Security Investigation, says in their report, which was supplied, well, you know, we're not going to prosecute him. He's not really a target. But the 213 says he's the main subject. It was somebody wholly different who is the main subject when you look what's behind the 213. And the 213 itself- But I don't think, I mean, I guess, I don't think it really turns on whether or not he's the main subject or not. I mean, it makes certain assertions about the visa application, how it was used. And there's also, then, in the record, references to visual discrepancies in the font for the visa that Tucker used to enter. And then at the hearing itself, I mean, it seemed to me that your client actually accepted responsibility for fraud. What am I missing there? So I want to get back to the accepting responsibility. But if you look at 213, which is at 257 in the record, the only reference is the visa shows discrepancies in the font. And check digit calculations do not work. To our mind, Your Honor, if they're just taking a visual inspection, is that clear and convincing evidence? I mean, it's equally possible that the government just made a mistake when they issued the visa. Turning back to the record at 33- Here's a fellow who has been turned down previous times. He's trying to come in and has been turned back. And then he says that he didn't have any understanding that this was a problematic visa and thought he was operating, you know, a boatboard. Why should his testimony be respected at all? Given the fact that if his motive, he wants to get in, he's been failed on other occasions. Seven times. This is another, this is another, this is the eighth time. So I just, good point, Your Honor. But I think it was actually two times. And that's the confusion, is the FDNS report talks about seven times. I think they talk about two times in the 213. Well, I'm not sure that makes it better, really. Two times is two times. I understand. But I think it goes to the inherent reliability of what the 213, whether the 213 in and of itself was reliable. As to, because I want to address Judge Sullivan's point about whether he admitted it. What's interesting about that, Your Honor, is if you, and we draw this out in our papers, he never says that he ever knew that it was fraudulent. He says, if you're telling me it's fraudulent, I guess I have to believe that because I have no independent way of challenging it. There is a reference in the government's brief that his attorney took responsibility. In looking at that, what he does is he makes an argument. Where are you referring to now? I'm sorry, DHS brief at page 21. Excuse me. I'm referring to the administrative record at 172 and 115. But with the, or excuse me, the September 15, 2018, waiver letter brief at AR 299, where the, my client's prior counsel submitted a letter where he says, you know, the elements of fraud. And he walks through the elements of fraud. And then there was no false statement by the respondent. He was not aware of the false city and did not intend to deceive U.S. officials. He applied for a visa in the usual format and got one not realizing until last appearance that it was a fraudulent visa. He was categorically denied making a fraudulent, he is categorically denied making a fraudulent statement. I would leave to the government to explain what else they were meaning by that because they draw out in their brief. But, I mean, counsel says the evidence is clear that there was some fraud. And so why is that not something that because it's not so much whether or not the final result was. It's it draws on to Mr. Tucker, whether he knew it was fraudulent and whether he was perpetrating the fraud. And I understand there's skepticism. And certainly the government did their job in trying to throw in all kinds of innuendos. He was never convicted of anything. And he was released as a suspect to the investigation. But certainly his, you know, the government draws out all of the, you know, the worst light they could. But he's never admitted. And he said on the stand, and we have this in our papers, I didn't know. And he says if you're telling me now it's fraudulent. Counsel says he accepts responsibility for the fraud. What do we make of that? That's his own lawyer. His own lawyer's statements are in admission. And why is that not just the end of the inquiry? So, Your Honor, to get the waiver, you know, you have to admit the fraud to apply for the waiver itself. Where I would ask the court to look first is whether he needed the waiver and whether the government met its initial burden. And I will tell you from my own long experience in the immigration court, you actually have to sometimes make a calculated decision, right? Because the judge is saying, well, if you admit the fraud, I'm going to give you the waiver here. When he actually testifies, when he testifies himself and his lawyer kind of works it to admit but not draw it from his client, the actual fact was he never admitted it on the stand. He never admits to the fraud. He makes clear that he is relying on the representations of the government that somehow this visa is not valid. But, Your Honor, to your point, it's difficult, right? Because on the one hand, he doesn't believe he's fraudulent. He's done anything wrong. He doesn't believe the government's met his burden. But in the alternative, he's got to file this waiver. And the waiver inherently forces him to admit to some fraud. And so what he does admit to is, if you're saying this was fraudulent, I will acknowledge that you're saying it's not right. But the standard goes to Mr. Tucker. And Mr. Tucker has said, I didn't know. And he was consistent about that all the way through. If the court doesn't have any other questions, Your Honor, I would rely on the rest of our brief. All right. Well, you've reserved three minutes for rebuttal, so we'll hear from you again. Thank you. Thank you very much, Mr. Fulton. We'll now hear from Mr. Fulton. Good morning, Your Honors. May it please the court. I'm Duncan Fulton for the Attorney General. Substantial evidence supports the agency's finding that Tucker was removable for fraudulently procuring his admission to the United States. The record does not compel a contrary finding. Today I'll first plan to focus on the plain primary evidence of the fraudulent visa Tucker used, as well as the visa records that reveal his fraud. I'd also like to talk about his concession of fraud, which we've discussed today, his pattern of immigration fraud, the government investigation reports, and his failure to submit documentary rebuttal evidence. So the record here does not compel a rejection of the multiple evidentiary bases of the fraud. So why don't you rank them for us? What do you think are the best, what's the best evidence you've got, and sort of start high and move down? Of course, Your Honor. First and foremost, there's strong primary evidence based on the visa we have in the record, as well as the visa records, which explain exactly what's going on. I'm happy to kind of walk through what's going on here in case that's helpful. If we look at the visa itself at page 331 of the record. We see on the bottom center right the eight-digit FOIL number, which ends in 264. That is the precise FOIL number that shows up at page 333 in Mr. Atkinson's visa file. This FOIL number is listed twice. It's listed on the bottom left of Mr. Atkinson's visa record, and again at the right side, and it says FOIL number in both locations. What's significant, Mr. Atkinson was issued that FOIL number in 2001, which is a full year prior to the time Mr. Tucker used it on the face of his visa. And we know that FOIL numbers are unique, identifying non-immigrant numbers, so it can't be the case that it was issued to two different people. That's simply not possible. If we compare the non-immigrant visa records for Mr. Atkinson. Mr. Atkinson, what do we know about him? I'm sorry, what do we know about Mr. Atkinson? Is he Jamaican? He's another Jamaican national. That's the extent to which the record speaks as to who this individual is. It's not clear whether they knew each other or where exactly they got this information. If we compare Mr. Atkinson's records at 333 to Mr. Tucker's last visa denial at 336, we have the Department of State records. This, by contrast, shows a very different story. It says in the middle left of this page, his visa was refused in 2004. There's also a blank FOIL number entry on this page. It says FOIL number and it's blank. We know this is not a redaction, as Tucker says, because if we look at the top of this page, we see a black box redaction as is typical for how things are redacted. So we know there was no FOIL number here, which makes sense because it never issued to Mr. Tucker. So that's the strongest primary evidence we have here, Judge Sullivan, to answer your question. I would also point out that Tucker mistakes the record in his reply brief at 6 when he says that Atkinson's visa record has no FOIL number. As we've just gone over, Mr. Tucker cited the wrong pages, 336 and 37, for that assertion. But if we look back at 333, that's where we see Atkinson's FOIL number. So this is proof that is coming from a reliable official government record that the visa number Tucker used on the face of his visa was for Atkinson, not for Tucker. This is powerful, substantiating evidence that Tucker himself perpetuated the visa fraud. I also want to talk about today his concession that we were just discussing with my colleague on the other side. Mr. Tucker indeed said in open court in the immigration court at 172, quote, the visa itself was a fraud, even though he's now arguing that, well, he didn't know of it at the time. He can't have it both ways. He can't concede for waiver purposes that he perpetuated fraud while denying that for removability purposes. And he is conceding there was some fraud. This matches his counsel's admission, which Judge Sullivan also asked about, that the evidence, quote, is clear there was some fraud. That's at AR 115 and 16. So this concession of fraud simply can't be squared with Tucker's contention that, well, perhaps the FOIL number, excuse me, was accidentally issued to him, or perhaps the DHS or the Department of State records are inaccurate. That simply doesn't square with his concession. Also, there's no evidence or even any logic to his assertion that perhaps this visa fraud was perpetuated without his knowledge. It doesn't make sense that someone else would have perpetuated this fraud for his own benefit without his knowledge. The record certainly doesn't compel that finding. I would also note that the immigration judge, as fact finder, specifically rejected his assertion that he did not know of the fraud at the time. This court should defer to the trial level adjudicator's finding on that matter under the substantial evidence standard. Looking at the evidence in this case, we have no evidence the Department of State ever issued him a visa. We have no evidence the Department of State ever attributed any FOIL number to him. We have no evidence to support his apparent belief that perhaps this visa was printed by the Department of State with Atkinson's visa number on it. He says he went and got this visa in person at the embassy, but he can show nothing to prove he ever went to a visa approval appointment. He can't provide evidence of the $100 bank payment he says he made as a fee payment for this visa. He also can't provide proof from his lawyer who represented him in this visa application. This is a lot of missing evidence. And he should have been able to obtain and submit at least some of this documentary rebuttal evidence to show his theory that he obtained this visa in a non-fraudulent manner. So in light of this primary evidence about the FOIL fraud, we know that the record does not compel reversal of the agency fraud finding. So just like in the precedent case of this court, Zeray v. Gonzalez, there this court found that the agency finding was supported by substantial evidence. The Department of Homeland Security proved removability by clear and convincing evidence based on one single document, the non-citizen's passport, without the need to look at any other evidence. So that same logic applies here. This court could easily uphold this decision just on the visa itself and just on the visa records. But here we actually have more than that. We have not just the visa records. We have not even just the 213, which we were just discussing. And even to the extent Mr. Tucker is correct that it's not precisely accurate as to the HSI investigation, that's a non-issue because that's not what is proving the removability in this case. Right, that's not what was relied on. Correct. And we also significantly here have evidence about his pattern of immigration fraud. We have evidence about, if we look back at 336, for example, this is the visa record for his final visa denial. This occurred in January 2004, which was only two months prior to his actual physical entry to the United States using this fake visa. So this close contemporaneous timing goes to the proof that he had such a strong intent to immigrate to the United States that he was willing to do so fraudulently. And it also shows he had the knowledge to perpetuate visa fraud. So the timing of that is significant. We can also look at the volume of his fraud and of his attempts to enter the United States. Although he says he only applied two times, we have agency findings in the investigation report that he applied seven times and was denied seven times. We also have evidence that the last one, as I just mentioned- I mean, there seemed to be a dispute that it's really only two times. I guess I'm trying to understand how seven could be confused with two. Your Honor, I'm simply making the point that this is one more piece of that. The volume shows, again, his fraudulent intent and knowledge. I would note, though, that, honestly, seven versus two, I don't think that's dispositive at all in this case. Well, I'm just asking which is accurate and how would we know? We have evidence in the investigation report that says it was seven times. He says he testified that he only applied two times, but that's just his testimony. Our standard of review is whether or not this evidence would have compelled the adjudicator to find that you had failed to carry your burden by clear and convincing evidence. So we look at there's some conflict here in this evidence, but we defer to the fact finder on the possibility he may have been persuaded by the seven, right? That's correct, Your Honor. Put together with everything else. That's correct, Your Honor. So that goes to my point that even if he were correct that it was only two times, we have so much evidence here that that's a non-issue under the substantial evidence standard, as Your Honor points out. Right, but our task here is not to resolve these factual disputes. It's only to decide whether they would have compelled the finding that he failed to carry the burden. That's correct, Your Honor. Okay. I would also note, again, we have the investigation reports. A couple last points. Well, I'll do one last point with my little time. The documentary evidence here was more than adequate. Before the immigration judge, Mr. Tucker did not challenge the reliability or authenticity of these documents we've been discussing. He never argued before the immigration judge that the DHS needed to meet its burden through live evidence. So this point has not been exhausted. He never made that issue below. He should have done so at pages 97 and 98 and 113 to 115 where this evidence was admitted. This court has said in the case Zeray that the DHS may rely exclusively on documentary evidence to support a removability charge against an admitted non-citizen. That's especially the case here where we have official government records that are presumptively reliable. So, Your Honor, as I see, I'm out of time. In conclusion, substantial evidence supports the agency's fraud finding, and this court should deny the petition for review. All right. Thank you, Mr. Fulton. We'll now hear from Mr. Formica for three minutes of rebuttal. Thank you, Your Honor. Your Honor, to the last point by counsel, the judge questioned whether the 213 was sufficient. We cover this in our brief at page 20. In an exchange with DHS counsel, the judge says, well, I mean, you have to decide whether you've met your burden or not. But it's not like there's a reference in the 213 to system checks and things like that that are not in the record. And then it says from the form number comes back to someone issued. So I don't know. And then it references to a sworn statement. I don't have a sworn statement either. I think the judge, although he's incredibly concise in his decision, is saying to the government, you've got to do something more than 213 to prove that there was a fraud here. So on that point, Your Honor, I would say that it's not enough just to say. But they did more than a 213, right? I mean. But what it put in, Your Honor, didn't really go to the underlying fraud. It went to a lot of other things, but it didn't go to the underlying fraud. Honestly, Your Honor, in the era that. Well, just the discrepancies on the visa. Your Honor, what we have. Don't they? All we have on the discrepancy on the visa, Your Honor, is that there is a gentleman, Mr. Atkinson, who had this FOIL number and that FOIL number shows up on Mr. Tucker's. And it's confusing even in the evidence. And as I have already said, I was confused when they had the two NIV details of Mr. Tucker. It was my assumption or presumption that they were talking about a photo substitute. And it turned out it wasn't, according to the government. But what about his application for a visa in response to which this visa was somehow produced under his theory? And there's no indication that he paid a fee except to say so. And what were the circumstances of his application? So I don't know if it was reasonable to expect that so many years later that he would somehow have this evidence as to the. . . Leaving that aside, that wasn't in the record, Your Honor. What I think was in the record, and it was the government's burden, initial burden. They had the initial burden of going forward on this to show that there was fraud. And I understand the court saying . . . I wasn't producing a visa that was issued to somebody else or at least had somebody else's FOIL number. But we . . . Sufficient evidence to be enough. And then you have to come forward and somehow come up with a better response. Well, Your Honor, because it's their initial burden, I'm not trying to belabor a point. But it's their initial burden to show it. And all they've showed us is a visa, two visa numbers don't match, and then a lot of character evidence. Plus the fact that he, according to their records, has never been issued a visa, right? According to their records, correct. And he has inconsistent testimony about where his purported original visa came to, whether it was lost or stolen. So he's got inconsistent accounts about a visa that he says he obtained, but that the government records show he was never issued. So this evidence admits an inference of fraud in . . . of knowledgeable fraud with respect to the visa he's employing with somebody else's number on it. Correct, Your Honor. Well, if that's so, if it admits that inference of knowledgeable fraud, how can we say no fact finder could have reached the conclusion that there was such knowledgeable fraud? So, Your Honor, I would turn back to the standard, is clear and convincing. Well, that was the standard the government had to have. We have to find that no fact finder could have concluded it was proved by clear and convincing evidence. Not whether we would have found it, but that no fact finder could have so found. Correct, Your Honor. And the reason that I don't believe . . . because even the . . . as I pointed out earlier, even Judge Strauss was at a loss with the government saying you've got to put more in than the 213. The BIA has said previously that the 213 under Barsonas explaining that documentary evidence can be admitted in removal proceedings only if it is probative and it is used to be fundamentally fair. Right, but it's not the only thing they put in. I mean, so looking at the record as it exists now, you have the 213, but you also have the other visa applications. You have the purportedly lost visa, stolen visa inconsistency for . . . with government records showing no visa ever issued. I mean, you've got this totality of evidence. So we have that issue, Your Honor, once we get past the government's initial burden. And I understand with the court saying that you're looking at no reasonable . . . Why isn't all of that evidence that could be considered in deciding whether the government carried its burden? Because at the end, with our fundamental argument, Your Honor, and I understand when I'm responding to you on his burden or, you know, the inference and whether he could have rebutted that, I've already gone . . . that's already over the gate and into the field. What I'm saying is at the gate, what was the judge looking at? Was there any evidence that a reasonable fact finder could have found? And it's our argument that if the issue is just the FOIL number, and that seems to have been the issue, they have just one line in the 213 that the government even . . . that the judge even mentioned, you know, are you going to put on more than that, says that there is a font discrepancy. So it's really, when you get down to what the issue was for the judge, it was whether or not they proved there was fraudulent because of a font discrepancy. All the other things in his rebuttal is true if this court believes it's simply a 213 that says a font discrepancy is sufficient that that's all you need to prove fraud. So . . . This is substantial evidence, right? So why isn't this substantial evidence that could amount to clearly convincing proof, which shifts the burden on you to come up and say, no, no, you're compelled to find to the contrary. Because that's, I mean, you know, once there's substantial evidence, that seems to be it. Unless . . . Because . . . You can come up with another version. Your Honor, to use maybe a bad metaphor, it's kind of like arguing with the bank as to how much money is in your account. Like how do you prove it once it's behind the door or once it's locked up? He didn't have access to the government. It's really, and that's frankly just a fairness issue. The government should have put in, and let's just put it out there, some evidence that that font was incorrect. Because Judge Strauss asks that question in the record. He says, is that all you got? I mean, I need something. And then in response to that, they put in a bunch of character evidence and they put in some innuendo. I'm sorry, they put in a bunch of . . . What I would describe as character evidence that didn't amount to anything. They talk about all this HSI stuff that doesn't amount to convictions or . . . I mean, it's a stack of character evidence, really, that I don't think was relevant to the issue of fraud. If it's just, hey, you're a dishonest person because you've been investigated or you drove somebody to the airport, that is enough for me to find as a trier of fact, clear and convincing, that that FOIL numbers font is incorrect. All right. Thank you. Well, we will reserve decision. Thank you both.